**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**JOHNNY JONES**                                                                                                  **PLAINTIFF**

**V.**                                                                                            **NO: 4:20CV152-M-JMV**

**MISSISSIPPI VALLEY STATE**
**UNIVERSITY; AND ELIZABETH**
**EVANS, Individually**                                                                          **DEFENDANTS**

**MEMORANDUM OPINION**

This cause comes before the Court on Defendants Mississippi Valley State University ("MVSU") and Elizabeth Evans' Motion for Summary Judgment [52] and Amended Motion for Summary Judgment [61]. Plaintiff Johnny Jones has responded in opposition to this motion, and the Court having considered the memoranda and the submissions of the parties is prepared to rule.

**Factual and Procedural Background**

Jones was hired by MVSU on February 1, 2018, for the position of Assistant Vice President of Academic Affairs and the Dean of University College. In 2018, Chinna Dunigan, Jones' administrative assistant and subordinate employee, brought charges of discrimination against MVSU. On May 23, 2019, Elizabeth Hurssey, MVSU's Director of Human Resources, asked Jones to submit Family and Medical Leave Act ("FMLA") leave forms for Dunigan, who was on FMLA leave at the time.

Jones states that the human resources office indicated that it possessed no leave forms for Dunigan's FMLA time off. Instead of completing the leave forms, Jones states that he sent Dunigan the blank form for her to complete, as he did not know how much FMLA leave was needed and that completing these forms himself in Dunigan's absence would be inappropriate. MVSU states that Jones was only asked to execute, or sign, the leave forms, rather than complete

1

them.  Jones also states that on May 30, 2019, Hurssey notified Jones and Dunigan that Dunigan's leave form for the time leading up to and including March of 2019 had been located.  On June 3, 2019, Jones and Dunigan completed the leave form for the Dunigan's remaining leave of April and May.  On the same date, Jones received a warning from his supervisor, Elizabeth Evans, Vice President for Academic Affairs.  The warning noted the following issues:

> • Failure to manage and follow protocols for reporting leave of absence for Ms. Chinna Dunigan for at least two consecutive months (April and May 2019)
>
> • Misleading information as to a "hands-off situation" that you stated was given to you as a directive to stay away from matters pertaining to Ms. Dunigan. Neither the University President nor I gave such a directive to you; and
>
> • Failure to follow protocols for reporting Ms. Dunigan's work for a federally funded program which could lead to grant/program issues.
>
> Actions of this nature will not be tolerated and further infractions may lead to additional corrective actions.

[52 Exhibit A]

On July 18, 2019, Jones received another warning from Elizabeth Evans stating that Jones was instructed to present implemented plans to the President's Executive Cabinet meetings and appropriate campus offices for a "Valley Bound" prospective student orientation and that Jones failed to do so.  The warning letter stated:

> During the scheduled President's Executive Cabinet meetings on July 9, 2019 and July 16, 2019, it was revealed that many of the implementation actions for a second Valley Bound session had not occurred or been communicated among the applicable offices. Therefore, this correspondence comes as a written warning for your failure to perform assigned duties which constitutes inexcusable neglect of duty and insubordination. Following the outcome of the one scheduled Valley Bound session in June 2019, you were directed by President Briggs to conduct a second Valley Bound session for the summer of 2019. On two occasions (July 9, 2019 and July 16, 2019) you were asked to provide planning information for the second Valley Bound session at the President's Executive Cabinet meeting. On each of the two occasions, President Briggs asked about the implementation actions for the second Valley Bound session and you failed to provide the required information. Your discussions centered more on what was not available, namely a communications plan, than specifying the actions that were underway to conduct a Valley Bound session. When told in the two Cabinet meetings that it was your responsibility to develop and implement such plans, you asserted that an

Enrollment Management plan was needed and that such a plan should come from the Enrollment Management team. During the second Cabinet meeting on July 16, 2019, you continued to reject leadership responsibility to coordinate and integrate campus-wide efforts for a second Valley Bound session for the summer of 2019. Even as you were given the specific task of planning and implementing Valley Bound sessions, you insist that this is the role of Enrollment Management.

Neglect of duty and insubordination, especially in a senior administrator, will not be tolerated and further infractions may lead to more stringent corrective actions.

[52 Exhibit B]

On July 23, 2019, Elizabeth Evans provided Jones with a termination letter notifying Jones that his employment as Assistant Vice President/Dean of University College in the Division of Academic Affairs was being terminated effective immediately.

On July 29, 2019, Jones filed a charge of discrimination with the EEOC alleging retaliation. After the EEOC issued a notice of right to sue, Jones filed suit in the Circuit Court for the First Judicial District of Hinds County, Mississippi on June 17, 2020. The notice of removal to this Court was filed August 28, 2020.

Jones' complaint alleges retaliation by MVSU under Title VII, Americans with Disabilities Act, Rehabilitation Act of 1973, and the Family and Medical Leave Act. Jones' complaint also alleges a claim of tortious interference with employment against Elizabeth Evans.

**Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150,

120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Once the moving party shows there is no genuine dispute as to any material fact, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.

## Discussion

### I.      Title VII – Retaliation – Prima Facie Case

Jones alleges that he was retaliated against in violation of Title VII. A plaintiff establishes a prima facie case of retaliation by showing that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; (3) a causal link exists between the protected activity and the adverse employment action. *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). If the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). If the employer satisfies its burden of production, the plaintiff then must prove that the adverse employment action taken against him would not have occurred but for the employer's retaliatory motive. *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 619 (5th Cir. 2020).

### I(a).    Protected activity

The first step in establishing a prima facie case of Title VII retaliation is demonstrating the existence of protected activity under Title VII.  The anti-retaliation clause of Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).  To show that the activity was protected, the employee must have had "at least a reasonable belief that the practices [he] opposed were unlawful." *Long v. Eastfield Coll*., 88 F.3d 300, 304 (5th Cir. 1996).  Opposition may take the form of refusal to obey an order because of a reasonable belief that it is discriminatory. 2 EEOC Compliance Manual § 8-IIB2.

Jones alleges that he engaged in protected activity under Title VII by refusing to encourage Dunigan to drop her EEOC charges alleging Title VII violations against MVSU.  Jones alleges that Elizabeth Evans expressed her displeasure with Jones for his refusal and failure to convince Dunigan to cease pursuing her Title VII violation claims against MVSU.

MVSU argues that Jones' deposition testimony contradicts his allegations that he refused to encourage Dunigan to drop her Title VII violation claims against MVSU.  MVSU references Jones' testimony where he was asked to state the ways he supported Dunigan's charges.  Jones states that he supported Dunigan's claims through an interview with Dunigan's attorney, which was not done until after Jones' termination.  The basis of this argument is that Jones cannot claim that MVSU's retaliation took place due to providing support after his termination.

MVSU argues that an affidavit that impeaches, without explanation, sworn testimony cannot be used to defeat a motion for summary judgment. *Brandon v. Sage Corp*., 61 F. Supp. 3d 632, 640 (W.D. Tex. Nov. 19, 2014).  Jones states, "I guess it was through the transcript, I mean,

when I say I supported." [52 Exhibit F] MVSU claims that this testimony impeaches the claim that Jones refused to encourage Dunigan to drop her charges and that Elizabeth Evans expressed her displeasure with Jones for this. However, the Court does not agree that this testimony is impeached by Jones' other allegations and claims. While Jones does not go into detail about the allegation that he refused to encourage Dunigan to drop her charges against MVSU, Jones states that he "did not play to the fact of working to get Ms. Dunigan to end the EEOC complaint." [52 Exhibit F].

There is no other argument provided by MVSU as to why both his refusal and failure to persuade Dunigan to drop her charges against MVSU should not be considered protected activity.

The U.S. Supreme Court has interpreted the scope of the opposition clause of Title VII's anti-retaliation provision quite broadly in favor of recovery. *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 279, 129 S.Ct. 846, 172 L.Ed. 2d 650 (2009). The U.S. Supreme Court in *Crawford* also cites *McDonnel* when discussing the broad coverage of Title VII, where the court found an employee to be covered by Title VII where his employer retaliated against him for failing to prevent his subordinate from filing an EEOC charge. *McDonnel v. Cisneros*, 84 F.3d 256, 262 (C.A.7 1996). While the factual scenario in this case is slightly different, as Dunigan had already filed her charge, the Court finds that refusing to encourage a subordinate employee to drop an EEOC charge may constitute protected activity.

**I(b).    Adverse employment action**

Whether Jones was subjected to an adverse employment action is not at issue, as the Defendants concede that this element was met when Jones was terminated from his position as Dean.

6

### I(c). Causal Link

To meet the third prong of a prima facie case of retaliation, Jones must prove that a causal link exists between the protected activity and the adverse employment action. In this case, Jones attempts to prove such a causal link by showing proximity in time between his protected activity and the adverse employment action. The causation element of a plaintiff's prima facie case may be proved by temporal proximity between the protected activity and the adverse employment action when they occur "very close" in time. *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007).

Jones states that during a meeting with Elizabeth Evans before his initial warning on June 3, 2019, he engaged in protected activity, which, as previously discussed, was refusing to encourage Dunigan to drop her charges against MVSU. Jones' adverse employment action took place on July 23, 2019. These dates show there to be less than two months between the protected activity and the adverse employment action, which is a short enough time to support an inference of a causal link. *Richard v. Cingular Wireless LLC*, 233 Fed.Appx. 334, 338 (5th Cir. 2007).

### I(d). Legitimate, Non-Retaliatory Reason

Once a plaintiff establishes a prima facie case of retaliation, the defendant must then articulate a legitimate, non-retaliatory reason for its employment action. Here, MVSU asserts that the reasons in Jones' written warnings, as stated earlier, were the reasons for his termination. MVSU clarifies that Jones demonstrated repeated disobedience to directives from MVSU's administration and continued to refuse to follow directions regarding the planning and implementation of the Valley Bound orientation. Stated simply, MVSU asserts that Jones was terminated for his failure to follow directions.

**I(e).    Pretext**

Because MVSU has proffered a legitimate, nonretaliatory reason for terminating Jones, Jones must show a conflict of substantial evidence of a retaliatory motive, which shows that the reason given by MVSU is actually a pretext for retaliation.  "A plaintiff may establish pretext 'by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc*., 333 F.3d 572, 578 (5th Cir. 2003).  "Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 578 (5th Cir. 2020).

There seems to be a significant dispute as to the truthfulness of MVSU's reasons for terminating Jones.  Regarding Jones' first warning, MVSU mainly argues that Jones failed to follow protocols for reporting Dunigan's leave of absence.  MVSU claims that Jones was asked to simply execute or sign Dunigan's leave forms, and Jones claims that he was directed to not only execute, but to also fill out and complete the leave forms.  Jones states that the policy for completing these leave forms is that the employee works with human resources to complete the forms and later Jones signs them.  Jones asserts that completing these forms without Dunigan would violate policy, as he did not know how much leave was needed by Dunigan, which is a large portion of the form.  Jones states that from the date he was asked to complete the forms, May 24, 2019, until the day the forms were completed, June 3, 2019, he was communicating with Dunigan to have the forms properly completed.  Neither party has produced any actual policy of MVSU which outlines the process in which leave forms are handled, and this creates a question of fact as to whether MVSU's proffered reasons are false or unworthy of credence.  Jones also disputes parts of the second warning from Elizabeth Evans, mainly denying the accusations while also asserting actions that he took which counter the allegations in the warning letter.

While temporal proximity between Jones' protected activity and his termination is relevant to demonstrate pretext, it cannot do so alone. When the temporal proximity is considered with the disputed facts leading up to the termination, the Court concludes that disputes of material facts exist, and summary judgment is denied as to Jones' Title VII retaliation claim.

## II. Family and Medical Leave Act – Retaliation

The family and medical leave act prohibits employers from discharging or in any other manner discriminating against an individual for opposing any practice made unlawful by the act. 29 U.S.C. § 2615 (a)(2). To survive summary judgment, an employee must first make a prima facie case of FMLA retaliation. *Richardson v. Monitronics International, Inc*., 434 F.3d 327, 333 (5th Cir. 2005). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. Once the employer articulates such a reason, the employee then has the burden to offer sufficient evidence to create a genuine issue of fact that the employer's reason is but one of the reasons for its conduct, while another reason is retaliation. Id.

Jones first must establish a prima facie case of FMLA retaliation, and to do so Jones must show that (1) he was protected under the FMLA, (2) he suffered an adverse employment action, and (3) the adverse action was taken because he sought protection under the FMLA. *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.,* 446 F.3d 574, 583 (5th Cir.2006).

### II(a). Protected activity

To be protected under the FMLA, Jones must establish that he engaged in protected activity, which includes "opposing any act or practice made unlawful by the FMLA" 29 U.S.C. § 2615(a)(2). The opposition clause of the FMLA is to be "construed in the same manner" as the clause in Title VII, in which protected activity can also include opposition to conduct or practices that are reasonably believed to violate the FMLA. *Besser v. Texas General Land Office*, 834

Fed.Appx. 876, 889 (5th Cir. 2020) (citing *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) (quoting S. Rep. No. 103–3, at 34–35 (1993). Jones' argument for his FMLA retaliation claim is that his protected activity was refusing to complete the requested leave forms in Dunigan's absence.

Jones' brief in response to Defendants' motion for summary judgment states that he did not complete the leave requests because Dunigan had already requested to use her personal leave and that completing the leave request would have violated university policies. The only mention of Jones' belief that this would have been illegal was during his deposition, where he briefly questioned the legality of signing a false document, of signing Dunigan's own name, and of signing forms which he believed to already be submitted. However, Jones does assert in his complaint, response to Defendants' Motion for Summary Judgment, and affidavit, that completing the leave forms would be fraudulent. The majority of Jones' testimony and submissions seem to argue not that completing these forms would have been unlawful under the FMLA, but that completing these documents would instead violate the university's policies. The Court must, however, draw all reasonable inferences in favor of the non-moving party, and in doing so the Court finds that refusing to complete FMLA leave forms under these circumstances and belief that doing so would be fraudulent may constitute protected activity under the FMLA.

**II(b).   Adverse employment action**

Whether Jones was subjected to an adverse employment action is not at issue, as the Defendants concede that this element was met when Jones was terminated from his position as Dean.

**II(c).   Causal Link**

To meet the third prong of a prima facie case of retaliation, Jones must prove that a causal link exists between the protected activity and the adverse employment action.  In this case, Jones appears to attempt to prove such a causal link by showing proximity in time between his protected activity and the adverse employment action.  The causation element of a plaintiff's prima facie case may be proved by temporal proximity between the protected activity and the adverse employment action when they occur "very close" in time. *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007).

Jones states that on May 24, 2019, he first began to refuse to complete the leave forms in the absence of Dunigan, due to his belief that completing them would be fraudulent.  Jones' adverse employment action took place on July 23, 2019.  This time frame of approximately two months is short enough to support an inference of a causal link.  *Richard v. Cingular Wireless LLC,* 223 Fed.Appx. 334, 338 (5th Cir. 2007).

**II(d).   Legitimate, Non-Retaliatory Reason**

Once a plaintiff establishes a prima facie case of retaliation, the defendant must then articulate a legitimate, non-retaliatory reason for its employment action.  As previously noted, MVSU asserts that the reasons in Jones' written warnings were the reasons for his termination.  MVSU clarifies that Jones demonstrated repeated disobedience to directives from MVSU's administration and continued to refuse to follow directions regarding the planning and implementation of the Valley Bound orientation.

**II(e).   Pretext**

Because MVSU has proffered a legitimate, nonretaliatory reason for terminating Jones, Jones must show a conflict of substantial evidence of a retaliatory motive, which shows that the

reason given by MVSU is actually a pretext for retaliation. "A plaintiff may establish pretext 'by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc*., 333 F.3d 572, 578 (5th Cir. 2003). "Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Brown v. Wal-Mart Stores East, L.P*., 969 F.3d 571, 578 (5th Cir. 2020).

For the same reasons discussed in the Court's analysis of establishing pretext under Jones' Title VII retaliation claim, the Court concludes that when the temporal proximity is considered with the disputed facts leading up to the termination, disputes of material facts exist, and summary judgment is not proper as to Jones' FMLA retaliation claim. Thus, Defendants' motion for summary judgment as to the FMLA retaliation claim is denied.

### III.    ADA and Rehabilitation Act – Retaliation

To establish a prima facie case of retaliation under the ADA and Rehabilitation Act, Jones must show that 1) he engaged in a protected activity under the ADA and Rehabilitation Act, 2) his employer took an adverse employment action against him, and 3) a causal connection existed between the adverse employment action and the protected activity. *Calderon v. Potter*, 113 Fed.Appx 586, 592 (5th Cir. 2004). The ADA and Rehabilitation Act prohibit an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA or Rehabilitation Act] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA or Rehabilitation Act]." 42 U.S.C. § 12203(a).

The Court first notes that it is unclear what Jones is claiming his protected activity to be for these claims. The complaint states that Jones was retaliated against because he supported Dunigan in filing a previous EEOC charge against MVSU, which alleged violations of the ADA

and the Rehabilitation Act. As the defendants note, the only support noted was in a sworn declaration provided to Dunigan's attorney three months after Jones' termination. Jones is unable to show assistance or participation in Dunigan's charges. Jones appears to rely on the previous argument that refusing to encourage Dunigan to drop her charges against MVSU constitutes protected activity also under the ADA. Jones makes no new arguments on how these actions would be considered protected activity under the ADA or rehabilitation act.

Jones appears to argue that since Dunigan had alleged violations of the ADA and the Rehabilitation Act, supporting these claims would be considered protected activity. Defendants reference Dunigan's complaint filed against MVSU to dispute these allegations, and Dunigan's complaint, however, only alleges Title VII sex discrimination, Title VII retaliation, and Fourteenth Amendment pregnancy/sex discrimination. Dunigan's complaint is the only evidence that would support Jones' claim that refusing to encourage Dunigan to drop her ADA charges is protected activity. This complaint, however, makes no mention of Dunigan having a claim alleging violation of the ADA.

Jones has failed to show that he opposed any act or practice that is made unlawful by the ADA or the Rehabilitation Act. Also, Jones has failed to show that he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA or Rehabilitation Act. Therefore, Jones has not shown that he engaged in a protected activity under the ADA and Rehabilitation Act, and thus, Defendants' motion for summary judgment will be granted as to the ADA and Rehabilitation Act retaliation claim.

## IV.    Tortious Interference with Employment

Jones alleges that Elizabeth Evans acted maliciously when she tortiously interfered in Jones' employment relationship with MVSU. A claim for malicious or tortious interference with

13

employment is treated the same as a claim for tortious interference with contract under Mississippi law. *Guest-White v. Checker Leasing, Inc.*, 2016 WL 595407, at *5 (N.D. Miss. Feb. 11, 2016) (citing *Roberson v. Wintston Cty., Miss.*, 2002 WL 449667 (N.D. Miss. Mar. 4, 2002)). Tortious interference with a contract is "malicious or intentional interference with a valid and enforceable contract by a third party which causes one contracting party not to be able to perform and the failure to perform results in a monetary loss for the other contracting party." *Courtney v. Glenn*, 782 So.2d 162, 164-65 (Miss. Ct. App. 2000) (citing *Cenac v. Murry*, 609 So.2d 1257, 1268 (Miss. 1992)). To establish a claim of tortious interference with contract, Jones must show:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiff in his lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause (which constitutes malice); and (4) that actual damage and loss resulted.

*Protective Serv. Life Ins. Co. v. Carter*, 445 So.2d 215, 217 (Miss. 1983).

"[A] person occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with the principal's contractual relationship with a third person." *Guest-White*, 2016 WL 595407, at *5 (citing *Morrison v. Miss. Enter. for Tech., Inc.*, 798 So.2d 567, 574 (Miss. Ct. App. 2001)). More specifically, a supervisor is privileged to interfere with an employee's employment contract unless the supervisor's actions are taken in bad faith. *Wigginton v. Washington Cty., Miss.*, 2013 WL 3157565, at *9 (N.D. Miss. June 20, 2013) (citing *Morrison*, 798 So.2d at 574).

This Court on multiple occasions has expressed its disapproval of what it finds to be the overuse of the malicious interference with employment cause of action in employment discrimination and retaliation cases. In *Pegues v. Mississippi State Veterans Home*, this Court wrote that:

> In the last few years, this court has increasingly seen the torts of malicious interference with employment relations and/or malicious interference with contract

14

being asserted as companion claims of sorts to various federal employment discrimination and § 1983 claims. The theory appears to be that any violation of federal law in the employment context also constitutes malicious conduct on the part of a supervisor, thereby subjecting them to individual liability for malicious interference with employment relations. However, this court strongly doubts that it was the Mississippi Supreme Court's intent to have the malicious interference cause of action serve as a "catch all" tort in the employment discrimination context…. Barring some indication from the Mississippi Supreme Court otherwise, this court will be extremely reluctant to conclude that the malicious interference tort was intended to serve as a duplicate state law remedy for cases where an employee is alleged to have acted with a motivation already prohibited by federal anti-discrimination laws. In so stating, this court notes that federal law has developed its own detailed body of law for courts to use in addressing allegations of employment discrimination and, unlike most states, Mississippi has no comparable body of state anti-discrimination law. While this absence may be regarded by many as regrettable, the fact remains that the malicious interference cause of action was simply not designed to deal with a subject matter as delicate and complex as workplace discrimination.

*Pegues*, 2017 WL 3298684, at *4-5 (N.D. Miss. Aug. 2, 2017).

The Court holds considerable skepticism regarding the overuse of the malicious interference tort in employment discrimination and retaliation cases, and the factual allegations against Elizabeth Evans individually are rather weak.  Jones' assertions make no true effort to establish the elements of a malicious interference with contract claim, and when also considering the Court's skepticism regarding using the same facts and evidence to support cumulative claims of employment retaliation and malicious interference with contract, Defendants' motion for summary judgment on this claim will therefore be granted.

### Conclusion

**ACCORDINGLY**, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment [52] and Amended Motion for Summary Judgment [61] is **GRANTED IN PART and DENIED IN PART**.  As a result, no claims remain against defendant Elizabeth Evans, and as such she is **DISMISSED** as a party.  It is hereby further **ORDERED** that Plaintiff's Motion for Extension of Time [54] is **MOOT**.

**SO ORDERED**, this 29th day of November 2021.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**